IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Cedric White, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 1:24-4118-BHH |
| ) | |
| v. ) | |
| ) | **ORDER** |
| Ron Lawrenz, Security Chief ) | |
| Ramos, Mr. Atkinson, Dr. Michelle ) | |
| Dube, and Major Lisa Young, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the Court upon Plaintiff Cedric White's ("Plaintiff") *pro se* complaint against the above-named Defendants ("Defendants"), wherein he alleges that Defendants failed to protect him from an assault by another resident of the South Carolina Sexually Violent Predator Treatment Program ("SVPTP"). On March 25, 2025, Defendants filed a for summary judgment along with a number of exhibits including affidavits, incident reports, and still images from the surveillance footage of the incident. (*See* ECF Nos. 37; 37-1 through 37-10.) Plaintiff filed a response in opposition on May 2, 2025. (ECF No. 43.) In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to a United States Magistrate Judge for preliminary review.

On May 14, 2025, United States Magistrate Judge Shiva V. Hodges issued a Report and Recommendation ("Report"), outlining the issues and recommending that the Court grant Defendants' motion for summary judgment. (ECF No. 44.) Attached to the Magistrate Judge's Report was a notice advising the parties of the right to file written objections to the Report within fourteen days of being served with a copy. On June 2, 2025, Plaintiff filed objections to the Magistrate Judge's Report. (ECF No. 46.)

**BACKGROUND**

In his unverified complaint, Plaintiff, who is a resident of the SVPTP, alleges that he and another resident of SVPTP, William Wilde ("Wilde"), were assaulted on May 23, 2024, by fellow SVPTP resident Michael Myers ("Myers"). According to Plaintiff, he told Myers that he was being rude during a group therapy session on May 16, 2024, following which Myers threatened Plaintiff. (ECF No. 1 ¶ 1.)

Notes from the next group therapy session on May 21, 2024, show that there was a therapist-led discussion during which the disagreement between Plaintiff and Myers (from the prior week) was discussed. (ECF No. 37-1.) According to Plaintiff, Myers explained that Plaintiff "was lucky and how [Myers] had been thinking about doing something to [Plaintiff]." (ECF No. 1 ¶ 4.) Plaintiff alleges this was an "outright threat[.]" (*Id.*)

According to Plaintiff, he spoke with a number of SVPTP staff persons in the days following May 16, 2024, about what was going on between Plaintiff and Myers, and about how Plaintiff did not feel safe. (*Id.* ¶¶ 2-3.) Plaintiff alleges that security Major Lisa Young told him "she would handle it from there." (*Id.*)

According to Young's incident report from May 22, 2024, she investigated the matter by conducting an interview of Myers the same day. (ECF No. 37-2.) Young's report states: "At approximately 200pm I spoke to R/S Mike Myers regarding this allegation and he stated that 'I never threaten that man, that he interrupted me in group and I told him not to do that.'" (*Id.*) The report continues by stating that Myers explained: "That man [Plaintiff] don't like me, and he wants to get out of the unit so he is going to try and use me to get out of the unit." (*Id.*) Young wrote the report and submitted it as an "FYI." (*Id.*)

Plaintiff submitted a resident communication form on May 22, 2024, stating that

Myers had threatened him for voicing how rude he was towards another resident in group therapy.  (ECF No. 37-3.)  In the form, Plaintiff alleges that "[t]his is the second time he has threaten[ed] me by trying to intimidat[e] me by the microwave 2 months ago."  (*Id.*)  Plaintiff asked for assistance "before it gets out of hand."  (*Id.*)

Plaintiff alleges that at the next group therapy session on May 23, 2024, Myers asked at the beginning "how my conversation about him went with Major Young." (ECF No. 1 ¶ 5.)  Plaintiff states that he knew then that "something was up," and has asked to be excused from group therapy but was told that his charts would document that he refused to attend group if he left, so he returned to the group.  (*Id.*)

According to Dr. Garvin, who was overseeing group therapy on May 23, 2024, Myers began arguing with her over paperwork for an assignment he had completed.  (ECF No. 37-5.)  When Garvin told Myers she would not discuss the assignment at that time, Myers became angry and approached Plaintiff.  (*Id.*)  Myers' argument with Garvin, and the subsequent altercations between Myers and Wilde and between Myers and Plaintiff were captured on surveillance footage.[1]

As can be seen in the still images provided by Defendants, after arguing with Garvin, Myers approached Plaintiff, who was seated in the corner of the room.  Two female officers then entered the room and redirected Myers towards Garvin.  (ECF Nos. 37-5; 37-6; 37-7.) At this point, Wilde stood up.  (ECF No. 37-6.)  One of the female officers, Danierre Baptiste ("Baptiste"), told Myers that he needed to leave, but Myers ignored her.  (ECF Nos. 37-5; 37-6; 37-7.)  Wilde challenged Myers' behavior, and after the two exchanged

---

[1] Attached as an exhibit to Defendants' motion for summary judgment is a series of 34 time-stamped still images from the video footage.  (*See* ECF No. 37-6 at 1-17.)

words, Myers punched Wilde in the face, knocking him down. (*Id.*) Garvin hit the panic button to summon additional staff while Myers punched Wilde. (ECF No. 37-6.) One of the security officers ran for help while the other unsuccessfully tried to physically discourage Myers' attack. (*Id.*) Although Plaintiff alleges in his complaint that Myers beat Wilde "bloody for about two minutes as security and case managers watched," the time stamp from the still images shows that Myers' physical altercation with Wilde, during which SVPTP personnel were actively addressing the situation, lasted fifteen seconds. (ECF No. 37-6.)

After the altercation with Wilde, Myers walked towards Plaintiff, who was still in the corner, and Plaintiff reacted defensively by raising a chair. (ECF Nos. 37-6; 37-7.) Plaintiff then collided with Myers and forced Myers back several steps. (ECF No. 37-6.) Myers struck Plaintiff, and Plaintiff tripped over Wilde, who was still on the floor, causing Plaintiff to fall to the floor as well. (*Id.*) About one second after Plaintiff first made contact with Myers, officer Michael Stephan ("Stephan") entered the room and walked toward Myers to direct him to stop fighting. (*See* ECF Nos. 37-5; 37-6; 37-7; 37-8.)

When Stephan approached, Myers reached down towards Plaintiff, who was on his back, and Plaintiff tried to fend off Myers with his feet. (ECF No. 37-6.) Myers grabbed Plaintiff by the leg and pulled him, causing Plaintiff's trousers to come down, and then leaned down and struck at Plaintiff's face twice, possibly connecting with Plaintiff at least once. (*Id.*) Stephan then placed himself between Myers and Plaintiff, and backed Myers into the corner with the help of Michael McDuffie ("McDuffie"), a former Wellpath corrections officer who was working at the time as an activity therapist across the hall and who had entered the room during the altercation. (*Id.*) Stephan and McDuffie calmed Myers down and escorted him out of the room while Plaintiff pulled up his trousers and

4

moved toward the corner of the room." (*Id.*)

Although Plaintiff alleges that "Myers turned on me and hit me in my face, head, and body for about three more minutes," the time stamps from the still images provided by Defendants show that the altercation between Myers and Plaintiff lasted approximately ten seconds. (*Cf.* ECF No. 1 ¶ 5 and 37-6.) Plaintiff also alleges that he was "knocked unconscious" during the assault, but no evidence supports this allegation.

Seconds after the fight was over, other staff entered the room and tended to Plaintiff. (ECF Nos. 37-6, 37-9.) Plaintiff was taken to the hospital, where he was evaluated and underwent two CT scans and an x-ray, and he was diagnosed with a strain of his right shoulder, a "possible nondisplaced nasal fracture," and a nosebleed. (ECF No. 37-10.)

## STANDARDS OF REVIEW

### I.    The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination only of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

### II.    Summary Judgment

To grant a motion for summary judgment, this Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court is not to weigh the

evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

In the Report, the Magistrate Judge thoroughly outlined the applicable law, noting that residents of SVPTP are civilly committed pursuant to the South Carolina Sexually Violent Predator Act ("SVPA"), S.C. Code § 44-48-10, *et seq.*, and that a civil commitment most closely resembles the custody of a pretrial detainee. (ECF No. 445 at 10 (citing *Treece v. McGill*, C/A No. 3:08-03909-DCN, 2010 WL 3781695, at *4 (D.S.C. Sept. 21, 2010).) The Magistrate Judge further explained that actions brought by pretrial detainees pursuant to 42 U.S.C. § 1983 for prison officials' alleged deliberate indifference to excessive risks of harm are evaluated under the Fourteenth Amendment based on a purely objective standard. (*Id.*) *See also Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *Short v. Hartman*, 87 F.4th 593 (4th Cir. 2023) (explaining that "it is enough that the plaintiff show that the defendant acted or failed to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known"). As the Magistrate Judge explained, it is "not enough for the plaintiff to allege that the defendants negligently or accidentally failed to do right by the detainee[;] [n]egligence was not enough before, and it is not enough now." (ECF No. 44 at 11 (quoting *Short*, 87 F.4th at 611-12) (citations omitted).)

6

The Magistrate Judge also properly explained the law governing the defense of qualified immunity, noting that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (ECF No. 44 at 12 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).)

After outlining the applicable law, the Magistrate Judge evaluated the evidence of record and found that Plaintiff failed to show that Defendants disregarded an unjustifiably high risk to Plaintiff's safety or ignored his report of a threat made against him by Myers. (ECF No. 44 at 37.)  The Magistrate Judge explained that Young investigated Plaintiff's report of the threat and circulated her report amongst staff, and the Magistrate Judge further explained that Plaintiff has offered no evidence to show that Defendants were deliberately indifferent in responding to his concerns.  (*Id.* at 13-14.)  In addition, the Magistrate Judge explained that even if Plaintiff had shown negligence on the part of Defendants, that would not establish a constitutional violation.

Likewise, the Magistrate Judge found that Plaintiff failed to show that Defendants disregarded safety during Myers' attack on him and Wilde, explaining that the evidence does not support Plaintiff's assertion that Defendants stood by idly as he was assaulted. (*Id.* at 14-15.)  Having found that Plaintiff failed to show that Defendants were deliberately indifferent, the Magistrate Judge recommended that the Court grant Defendants' motion for summary judgment.

In his objections to the Magistrate Judge's Report, Plaintiff first asserts that the Magistrate Judge erred in viewing his complaint "from a negligence point of law instead of

the point made in the complaint that the defendants were made aware of the serious risk of harm, on several occasions, posed by resident Myers that assaulted me, and totally disregarded that risk of harm." (ECF No. 46 at 1.)

After *de novo* review, however, the Court finds no merit to Plaintiff's objection as the Magistrate Judge did not err in viewing Plaintiff's complaint from a negligence point of view; rather, as set forth above, the Magistrate Judge properly set forth the applicable law, noting that negligence is not enough to establish prison officials' deliberate indifference to excessive risks of harm. As the Magistrate Judge noted, Plaintiff did not show any objectively unreasonable actions or inactions on the part of Defendants. In all, therefore, the Court fully agrees with the Magistrate Judge that "Plaintiff has not shown that Defendants were negligent, *much less deliberately indifferent*." (ECF No. 44 at 14 (emphasis added).)

As a second objection, Plaintiff asserts that the Magistrate Judge only took into account the evidence submitted by Defendants and totally dismissed the allegations of his complaint. (ECF No. 46 at 1-2.) Plaintiff asserts, "I had thought that my complaint was suppose[d] to be taken as true and that all evidence of the non-moving party was to be believed." (*Id.* at 2.)

Here again, after *de novo* review, the Court finds no merit to Plaintiff's objection. First, although Plaintiff is correct that all *evidence* should be viewed in favor of the nonmoving party, as the Magistrate Judge properly explained, "Plaintiff's complaint is not verified, nor has he otherwise offered *evidence* to dispute Defendants' evidence." (ECF No. 44 at 2, n. 2 (emphasis added).) In other words, because Plaintiff's complaint is not verified, it cannot be used as an affidavit to create a dispute of material fact to preclude

summary judgment. *Wiliams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted) (emphasis in original) (explaining that "a *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge"); *Goodman v. Wright*, 986 F.3d 493, 498 (4th Cir. 2021) (quoting the same); *Davis v. Zahradnick*, 600 F.2d 458, 459-60 (4th Cir.1979) (holding that the factual allegations contained in a *verified* complaint establish a prima facie case under 42 U.S.C. § 1983, so as to preclude summary judgment).

Second, "[a]s a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." *Williams*, 952 F.2d at 823 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, (1986); Kipps v. Ewell, 538 F.2d 564, 566 (4th Cir.1976); and Fed.R.Civ.P. 56(e)). Here, as the Magistrate Judge explained, Plaintiff's complaint is not verified, and he has offered no other evidence to dispute Defendants' evidence. After *de novo* review, therefore, the Court finds that Plaintiff's unverified complaint does not give rise to a genuine dispute of material fact; instead, the evidence of record shows that Defendants acted reasonably and were not deliberately indifferent to an unjustifiably high risk of harm. Accordingly, the Court grants Defendants' motion for summary judgment.

**CONCLUSION**

For the foregoing reasons, the Court adopts and incorporates the Magistrate Judge's Report (ECF No. 44); the Court overrules Plaintiff's objections (ECF No. 46); and the Court grants Defendants' motion for summary judgment (ECF No. 37).

9

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

March 2, 2026
Charleston, South Carolina